# Illinois Official Reports

## Appellate Court

---

### *People v. Daniels*, 2020 IL App (1st) 171738

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PATRICE DANIELS, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-17-1738 |
| Filed<br>Rehearing denied | August 21, 2020<br>September 23, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 94-CR-17095; the Hon. Michael B. McHale, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Adrienne E. Sloan, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Jon J. Walters, and David B. Greenspan, Assistant State's Attorneys, of counsel), for the People. |

Panel

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Cunningham and Connors concurred in the judgment and opinion.

**OPINION**

¶ 1   In the summer of 1994, 18-year-old Patrice Daniels turned himself in to police, confessing that several days earlier he had sexually assaulted and murdered a woman in Chicago's Grant Park. Facing the death penalty, Mr. Daniels pleaded guilty to first degree murder in exchange for a sentencing recommendation by the State of natural-life imprisonment. Based on the undisputed facts supporting that plea, the circuit court imposed the recommended sentence.

¶ 2   This case is now on appeal from the denial of Mr. Daniels's *pro se* motion for leave to file a successive postconviction petition. Relying on recent caselaw and evolving societal standards governing the sentencing of youthful offenders, Mr. Daniels argues that he has established cause and prejudice for the filing of an as-applied challenge to his sentence under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). We agree. For the reasons that follow, we reverse the circuit court's denial of Mr. Daniels's motion and remand for second-stage proceedings on his petition.

¶ 3                                    I. BACKGROUND

¶ 4   Following a court-ordered examination and fitness hearing, Mr. Daniels, who had a history of psychiatric treatment, was found fit to stand trial with medication.

¶ 5   On October 18, 1995, Mr. Daniels pleaded guilty to a single count of first degree murder (720 ILCS 5/9-1(a)(3) (West 1994)). In exchange, the State, which could have sought the death penalty, agreed to recommend that Mr. Daniels instead receive a sentence of natural life in prison without parole. The circuit court admonished Mr. Daniels regarding the consequences of a guilty plea, questioned him to establish his understanding of those consequences, and concluded that his plea was knowing, understanding, and voluntary. The judge explained to Mr. Daniels the range of sentences he faced: 20 to 60 years for first degree murder, the possibility of an extended term of up to 120 years, and the death penalty, which was not suspended in Illinois until 2000.

¶ 6   As a factual basis for the plea, the State offered the following. On June 5, 1994, Candida Torres was found strangled to death in Grant Park, partially clothed, in the bushes. Four days later, Mr. Daniels turned himself in to Chicago police and confessed to murdering Ms. Torres. Mr. Daniels told the police that he had dragged Ms. Torres into the bushes, beaten her, choked her with his belt, and sexually assaulted her. Evidence recovered from the scene, including the belt and a hat that Mr. Daniels identified as his, cuts and scratches on his hands and face, human blood found on his shoes, and semen found inside the victim's body all corroborated this account. The court accepted this as a sufficient factual basis for the guilty plea, confirmed that Mr. Daniels understood he was waiving his right to have a presentence investigation report considered before his sentence was imposed, and found him guilty of first degree murder. The remaining charges against Mr. Daniels were nol-prossed. The court then imposed the agreed sentence of natural life in prison without the possibility of parole.

¶ 7        In an initial postconviction petition filed in 1998, Mr. Daniels argued that his due process rights had been violated because he was not of sound mind when he entered his plea, was unaware of his right to obtain independent psychological testing, and had believed he was being sentenced to 60 years rather than natural life in prison. This court affirmed the first-stage dismissal of that petition. *People v. Daniels*, 323 Ill. App. 3d 1146 (2001) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 8        In 2010, Mr. Daniels sought leave to file a successive postconviction petition, in which he contended that he had been unfit to participate in his plea hearing and only accepted the plea agreement because he had failed to take his prescribed medication that day. The circuit court denied Mr. Daniels leave to file the petition, and Mr. Daniels did not appeal that ruling.

¶ 9        On April 19, 2017, Mr. Daniels filed the *pro se* motion for leave to file a successive postconviction petition that is the subject of this appeal. In the petition, Mr. Daniels argued for the first time that his natural-life sentence is unconstitutional under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) because it "shocks the moral sense of the community" to sentence an 18-year-old offender to a life sentence. Mr. Daniels relied on this court's decisions in *People v. Harris*, 2016 IL App (1st) 141744, and *People v. House*, 2015 IL App (1st) 110580, cases recognizing that although the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012)—in which the Court held that sentencing juveniles to mandatory life sentences without the opportunity for parole violates the eighth amendment to the United States Constitution—does not directly apply to individuals who were 18 years of age or older at the time of their offenses, such individuals may still raise youth-based as-applied challenges to life sentences under the proportionate penalties clause of the Illinois Constitution. Mr. Daniels maintained that he had demonstrated cause for failing to make this argument sooner because these cases were decided after the filing of his previous postconviction petitions and prejudice because, under the caselaw as it has evolved since *Miller*, he can now demonstrate that his natural-life sentence is unconstitutionally disproportionate.

¶ 10       Noting that *Miller* applies directly only to juveniles, the circuit court denied the motion. Mr. Daniels now appeals.

¶ 11                                    II. JURISDICTION

¶ 12       The circuit court denied Mr. Daniels's motion for leave to file a successive postconviction petition on June 1, 2017, and Mr. Daniels timely filed his notice of appeal from that decision on June 20, 2017. We have jurisdiction over this appeal pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 606 (eff. Dec. 11, 2014) and Rule 651(a) (eff. Feb. 6, 2013), governing criminal appeals and appeals from final judgments in postconviction proceedings.

¶ 13                                     III. ANALYSIS
¶ 14                                      A. Waiver
¶ 15       The State initially argues that the circuit court correctly denied Mr. Daniels's motion because he is barred from raising an as-applied challenge to a sentence he agreed to as part of a negotiated guilty plea. Although the parties use the terms "waiver" and "forfeiture" somewhat interchangeably in their briefs, the concepts are distinct. A party's failure to raise

an issue in a timely manner may result in forfeiture. *People v. Blair*, 215 Ill. 2d 427, 444 n.2 (2005). Waiver, on the other hand, is the voluntary relinquishment of a right. *Id.* The State's argument is that Mr. Daniels affirmatively waived his right to have the circuit court consider *any* mitigating circumstances before sentencing him, including those related to his youth or mental health history. In support of this argument, the State relies heavily on our supreme court's decision in *People v. Jackson*, 199 Ill. 2d 286 (2002).

¶ 16 The defendant in *Jackson* pleaded guilty to aggravated battery in exchange for the State recommending a sentence within the normal range of imprisonment for that offense. *Id.* at 288-89. Before accepting the plea, however, the circuit court made clear to the defendant that it would not be bound by such an agreement and, specifically, that she could still be sentenced to an extended term of imprisonment if the court determined that her offense involved " 'exceptionally brutal or heinous behavior.' " *Id.* at 289. Following a hearing, and after citing the premeditated and extreme nature of the crime, the circuit court sentenced the defendant to the maximum sentence of 10 years in prison. *Id.* at 291-92. The defendant argued unsuccessfully on direct appeal that her sentence violated due process because under the United States Supreme Court's subsequent holding in *Apprendi v. New Jersey*, 530 U.S. 466, 476-77 (2000), a jury, and not a judge, should have decided whether her crime involved exceptionally brutal or heinous behavior. *Jackson*, 199 Ill. 2d at 292, 295. Our supreme court, however, concluded that, by entering a plea of guilty, the defendant had waived this as-applied claim of unconstitutionality. *Id.* at 295. In the court's view, "[a]n *Apprendi* challenge raised in the wake of a guilty plea is an argument that a defendant was deprived of due process when he did not get a jury trial after waiving his right to a jury trial." *Id.* at 301. "Simply to state the argument," said the court, "reveals why it cannot be heard." *Id.*

¶ 17 The State insists that *Jackson* is equally applicable here: just as the defendant in *Jackson* was barred from raising newly recognized jury issues because he had expressly waived the right to a trial by jury, Mr. Daniels should be barred from raising newly recognized sentencing claims because he waived consideration of all such claims when he entered into a negotiated guilty plea. The State, however, cites no case applying *Jackson* so broadly. Indeed, in reviewing and restating its reasoning in *Jackson*, our supreme court has taken care to express its holding in that case quite narrowly. See *People v. Townsell*, 209 Ill. 2d 543, 548 (2004) ("we meant precisely what we said in *Jackson*: '*Apprendi-based* sentencing objections cannot be heard on appeal from a guilty plea.' " (emphasis added) (quoting *Jackson*, 199 Ill. 2d at 296)). The State has simply not convinced us that the outcome in this case, which involves *what* should have been considered at sentencing and what was a permissible sentence, is controlled by the holding in *Jackson*, a case concerned solely with *who* should make factual findings related to sentencing.

¶ 18 Nowhere in *Jackson*, moreover, did our supreme court indicate that its holding was in tension with the well-established principle that "[w]aiver of a constitutional right is valid only if it is clearly established that there was an intentional relinquishment or abandonment of a known right" or the requirement that "[s]uch waivers must not only be voluntary, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." (Internal quotation marks omitted.) *People v. McClanahan*, 191 Ill. 2d 127, 137 (2000). Here, Mr. Daniels did not and could not have known at the time of his guilty plea that he could argue his natural-life sentence—a sentence he submitted to in order to avoid execution—was constitutionally disproportionate as applied to him. Our supreme court would

- 4 -

not recognize the potential viability of youth-based claims made by young-adult offenders for another 20 years. See *People v. Harris*, 2018 IL 121932, ¶ 48 (citing *People v. Thompson*, 2015 IL 118151, ¶ 44).

¶ 19     Given all of this, and mindful as we are that principles of waiver should be construed narrowly so as to not undermine the rights of a criminal defendant (*People v. Phipps*, 238 Ill. 2d 54, 62 (2010)), we are disinclined at this time to expand the scope of *Jackson* beyond sentencing claims based on *Apprendi* violations. We conclude that Mr. Daniels did not knowingly waive his right to bring the as-applied proportionate penalties claim he now seeks to assert.

¶ 20                              B. Cause and Prejudice

¶ 21     We next consider whether Mr. Daniels has made the requisite showing of cause and prejudice for the filing of a successive postconviction petition. The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(a)(1) (West 2016)) provides a method for a criminal defendant to challenge his or her conviction by establishing that "in the proceedings which resulted in [the] conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." "A proceeding under the Act is a collateral attack on the judgment of conviction." *People v. Wrice*, 2012 IL 111860, ¶ 47. The Act, however, contemplates the filing of only one postconviction petition. 725 ILCS 5/122-1(f) (West 2016); *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002). Claims that were decided on direct appeal or in an earlier postconviction proceeding are generally barred by the doctrine of *res judicata*, and claims that could have been, but were not, raised in an earlier proceeding are forfeited. *Blair*, 215 Ill. 2d at 443-44. Because successive postconviction petitions are disfavored (*People v. Bailey*, 2017 IL 121450, ¶ 39), a defendant seeking to file such a petition must demonstrate either "cause and prejudice" for failing to raise a claim earlier, or actual innocence (*People v. Edwards*, 2012 IL 111711, ¶¶ 22-23). We review a circuit court's denial of leave to file a successive petition *de novo. People v. Jackson*, 2016 IL App (1st) 143025, ¶¶ 32-34.

¶ 22     Here, Mr. Daniels sought leave under the cause-and-prejudice exception to the general rule against the filing of successive postconviction petitions. Section 122-1(f) of the Act, which codifies that exception, provides that a prisoner shows cause by "identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings" and prejudice by "demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2016). Summarizing this standard, our supreme court has stated:

> "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35.

¶ 23     To meet this standard, Mr. Daniels relies on recent caselaw governing the sentencing of juvenile and young-adult offenders, which we agree has evolved considerably since he was sentenced in 1995 and since the filing of his earlier postconviction petitions. Although considerations of cause and prejudice are often intertwined, here the State does not dispute that

the authorities Mr. Daniels relies on were previously unavailable to him. The State's position is that the authorities simply do not apply. Because this area of the law will no doubt continue to evolve, it is helpful to summarize just where it stands at this moment.

¶ 24    In *Miller*, the Supreme Court established a new substantive right: exemption, in all but the rarest of circumstances, from sentences of life in prison without the opportunity for parole for juvenile offenders. See *Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 734 (2016) (explaining the Court's holding in *Miller*). It defined juvenile offenders narrowly, however, based on societal norms, as those under the age of 18 at the time of their crimes. *Miller*, 567 U.S. at 465. For this narrow group—and excepting the possibility that a juvenile's crimes might in rare cases reflect "irreparable corruption"—the Court determined that a life sentence without the opportunity for parole is *categorically* cruel and unusual under the eighth amendment. (Internal quotation marks omitted.) *Montgomery*, 577 U.S. at ___, ___, 136 S. Ct. at 726, 734. Our own supreme court has held that this is true regardless of whether the life sentence is actual or *de facto*, mandatory or discretionary. *People v. Reyes*, 2016 IL 119271, ¶¶ 9-10; *People v. Holman*, 2017 IL 120655, ¶ 40. In arriving at and in applying this new substantive rule, "the Supreme Court has clearly and consistently drawn the line between juveniles and adults for the purpose of sentencing at the age of 18." *Harris*, 2018 IL 121932, ¶ 58.

¶ 25    In the past five years, however, our supreme court has twice acknowledged that young adults—at least those who were 20 years of age or younger at the time of their crimes—may still rely on the evolving neuroscience and societal standards underlying the rule in *Miller* to support as-applied challenges to life sentences brought pursuant to the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11). See *Thompson*, 2015 IL 118151, ¶¶ 43-44 (noting that a defendant, who was 19 years old at the time of his crime, could not bring such a claim for the first time on direct appeal but was "not necessarily foreclosed" from asserting it in postconviction proceedings); *Harris*, 2018 IL 121932, ¶ 48 (concluding that the as-applied, youth-based sentencing claim of a defendant who, like Mr. Daniels, was 18 at the time of his crime, was "more appropriately raised" in postconviction proceedings). In doing so, the court opened the door for a young-adult offender to demonstrate, through an adequate factual record, that his or her own specific characteristics were so like those of a juvenile that imposition of a life sentence absent the safeguards established in *Miller* was "cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community." See *People v. Klepper*, 234 Ill. 2d 337, 348-49 (2009) (stating what is required to succeed on a proportionate penalties claim).

¶ 26    In the two years since *Harris* was decided, this court has on several occasions reversed the circuit court's denial of a defendant's motion for leave to file a successive postconviction asserting just such an as-applied, youth-based proportionate penalties claim. In *People v. Ruiz*, 2020 IL App (1st) 163145, ¶ 33, and *People v. Johnson*, 2020 IL App (1st) 171362, ¶ 15, for example, we observed that while *Harris* foreclosed challenges raised by young-adult offenders under the eighth amendment, it had "pointedly left open the applicability of the Illinois Constitution" to such claims. We held that the defendant in *Ruiz*, who was 18 years old when he committed his crime, had stated a claim that, "as a matter of law," he had been prejudiced by his justified failure to raise such a claim in earlier proceedings and that he had supported his claim with "detailed, well-cited legal argument, set[ting] out why the protections in *Miller*, and in the Illinois cases applying it, should benefit young adults." *Ruiz*, 2020 IL App (1st)

163145, ¶¶ 53, 56. Whether the defendant could make a substantial showing of a constitutional violation sufficient to proceed to an evidentiary hearing very much remained to be seen, but his petition and supporting documents were enough, we concluded, to justify further proceedings. *Id.* ¶¶ 53, 55-56. We held that the defendant in *Ruiz* "should have been allowed to proceed based on his well-pled assertions." *Id.* ¶ 59; see also *Johnson*, 2020 IL App (1st) 171362, ¶ 34 (employing the same reasoning to reverse the circuit court's denial of a 19-year-old offender's motion for leave to file a successive postconviction petition).

¶ 27    In *People v. Carrasquillo*, 2020 IL App (1st) 180534, and *People v. Minniefield*, 2020 IL App (1st) 170541, we further observed that where, as here, a defendant could not have raised an as-applied, youth-based sentencing challenge in his initial postconviction proceedings and where our supreme court in *Thompson* and *Harris* made clear that consideration of such claims without a developed record is premature, a " '[d]efendant has shown prejudice by establishing a "catch-22" ***—without a developed record, he cannot show his constitutional claim has merit,' " and without a meritorious claim " 'he cannot proceed to develop a record.' " *Minniefield*, 2020 IL App (1st) 170541, ¶ 44 (quoting *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109).

¶ 28    Here, both sides also discuss at length *People v. House*, 2019 IL App (1st) 110580-B, ¶ 65, *appeal allowed*, No. 125124 (Ill. Jan. 29, 2020). In this often-cited and often-distinguished case, the latest version of which is now on appeal to our supreme court, this court considered whether a young-adult offender had stated the gist of an as-applied, youth-based sentencing claim—as he was required to do in order to advance to the second stage on an initial postconviction petition. Although the defendant was not a juvenile at the time of his offense, we noted that "his young age of 19 [was] relevant under the circumstances of [the] case." *Id.* ¶ 46. So too were the facts that he had only served as a lookout, was found guilty of murder on a theory of accountability, and had received the same sentence of mandatory life in prison as the actual shooter. *Id.* A 17-year-old codefendant with similar culpability, on the other hand, was sentenced as a juvenile and had already been released from prison. *Id.* This court was especially troubled by the fact that the life sentence the defendant received was mandatory and the judge was thus "precluded from considering the goal of rehabilitation," which we found "especially relevant" under the circumstances of that case. *Id.* ¶ 64.

¶ 29    The State eagerly points out the differences between the facts in *House* and those in this case. It is undisputed, for example, that Mr. Daniels was not a mere lookout but pleaded guilty as the sole perpetrator of a violent sexual assault and murder. The sentence he received was also, unlike the sentence imposed in *House*, not one that was required by law. The sentencing judge could have rejected the parties' plea deal if he felt that a natural-life sentence was not warranted. See *People v. Henderson*, 211 Ill. 2d 90, 103 (2004) ("A circuit court may reject a plea in the exercise of sound judicial discretion.").

¶ 30    The argument that a case must be on all fours with *House* for a defendant to proceed on an as-applied, youth-based proportionate penalties claim has proved seductive and seems to have been implicitly adopted by this court in at least two published decisions since *Harris* (see *People v. Ramsey*, 2019 IL App (3d) 160759, ¶¶ 4, 23 (no prejudice where 18-year-old offender was an active participant in the crime); *People v. Handy*, 2019 IL App (1st) 170213, ¶¶ 3, 40-41 (no prejudice where an 18-year-old offender received a discretionary sentence and was an active participant in the crime)), as well as in several unpublished orders under Illinois Supreme Court Rule 23 (eff. Apr. 1, 2018). This same reasoning has also been followed in

cases where the defendants were 21 years old or older at the time of their crimes and would therefore not be, in our view, young adults who could even bring an as applied claim under *Harris* and its progeny. See *People v. Green*, 2020 IL App (5th) 170462, ¶¶ 26, 35 (holding no prejudice could be claimed where a 22-year-old offender received a discretionary sentence and was an active participant in the crime); *People v. Hoover*, 2019 IL App (2d) 170070, ¶ 42 (no prejudice where a 22-year-old offender was an accomplice but still played a significant role in the crime); see also *People v. Humphrey*, 2020 IL App (1st) 172837, ¶ 33 (holding that there is no support for a defendant who was 21 or over at the time of his or her crime to bring an as applied challenge seeking application of *Miller*).

¶ 31    Although we agree with the result in *House*, we are unconvinced and believe it is premature at this juncture to conclude that the *only* way a defendant can establish cause and prejudice for the filing of a successive petition asserting an as-applied, youth-based sentencing claim is by demonstrating that the facts of his or her case align with those in *House*. As the State itself acknowledges, "there has been virtually no guidance as to what, exactly, an adult defendant must show to obtain relief under *Miller*'s auspices." In *Harris*, our supreme court clearly envisioned an evidence-based factual inquiry when it declined to consider such a claim on direct appeal where the record included "only basic information about [the] defendant, primarily from the presentence investigation report," an evidentiary hearing had not been held, and the trial court had made no findings "on the critical facts needed to determine whether *Miller* applie[d] to [the] defendant as an adult." *Harris*, 2018 IL 121932, ¶ 46. Nowhere did the *Harris* court suggest—and nowhere does *House* suggest, we might add—that a defendant's degree of participation in a crime or discretionary sentence should utterly disqualify him or her from raising such a claim.

¶ 32    Other decisions of this court have also noted that the facts in *House*, while compelling, would not appear to be the only avenue for this kind of claim. See *Ruiz*, 2020 IL App (1st) 163145, ¶ 39 (noting that the degree to which a defendant participated in an offense will remain a consideration during sentencing but "[t]o prevent young adult offenders from relying on the mitigating circumstance of their youth simply because they more directly participated in the offense would be error"); *Johnson*, 2020 IL App (1st) 171362, ¶ 18 (concluding that, if a young-adult offender can demonstrate that *Miller* applies to him, "the distinction between mandatory and discretionary sentences evaporates").

¶ 33    On remand, Mr. Daniels may or may not be able to make a substantial showing to support his claim. Evidence he points to in the record certainly indicates that he had an unusually harsh childhood and suffered from a number of psychological conditions that could have inhibited his development and caused him to act impulsively. We acknowledge that Mr. Daniels can no longer rely on this court's decision in *People v. Coty*, 2018 IL App (1st) 162383, ¶ 69, in which we held that, for purposes of analyzing sentencing challenges under the proportionate penalties clause, intellectually disabled individuals should be treated similarly to juveniles. During the pendency of this appeal our supreme court reversed that decision, making clear that though such individuals may be less culpable, they are also less likely than juveniles to outgrow the conditions that may have contributed to their crimes. *People v. Coty*, 2020 IL 123972, ¶¶ 36, 39-40. However, unlike the defendant in *Coty*, Mr. Daniels may be able to make a showing that his mental health conditions are of a nature that he can and will outgrow them and that he was the functional equivalent of a juvenile because of those conditions.

¶ 34     We agree with Mr. Daniels that it is premature at this early juncture to find that his claim fails as a matter of law or that his petition and supporting documentation are insufficient to justify further proceedings. See *Smith*, 2014 IL 115946, ¶ 35. The State does not dispute that there is cause here since the authorities Mr. Daniels relies on were decided long after his sentencing, direct appeal, and previous postconviction petitions. Included in those authorities are *Thompson* and *Harris*, which make clear that an as-applied, youth-based sentencing challenge by a young-adult offender pursuant to the proportionate penalties clause is a claim available to defendants in postconviction proceedings. However, at this point, our supreme court has not yet outlined the parameters of such a claim. Bearing in mind that the law has continued to trend in the direction of increased protections for youthful offenders, we decline to follow *Ramsey* and *Handy*, cited above (*supra* ¶ 30), where the court, in seeking to distinguish the defendants before them from the defendant in *House*, turned relevant sentencing factors into threshold requirements. While the defendant's age, relative culpability, and the fact that a life sentence was mandatory, all of which we found compelling in *House*, are factors that remain an important part of any sentencing decision, they do not directly bear on the narrow question that is at the heart of these claims: at the time of his crime, did the defendant think and behave like a juvenile such that a life sentence, as applied to him, is unconstitutional? We think Mr. Daniels has shown prejudice because he has not yet had the opportunity to ask a court to consider this fundamental question and has directed this court's attention to at least some contemporaneous documentation regarding his mental health and personal characteristics that he might use to support such a claim.

¶ 35                                          IV. CONCLUSION

¶ 36     For these reasons, we reverse the circuit court's denial of Mr. Daniels's motion for leave to file a successive postconviction petition and remand for further proceedings consistent with the Act.

¶ 37     Reversed and remanded.