2021 IL App (1st) 191145
No. 1-19-1145
Opinion filed March 31, 2021

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 99 CR 147-02 |
| LAMONTREAL GLINSEY, | ) ) ) | The Honorable Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justice Reyes concurred in the judgment and opinion.
Justice Martin dissented, with opinion.

**OPINION**

¶ 1        Defendant Lamontreal Glinsey claims that the trial court erred by denying him leave to file a successive postconviction petition challenging his sentence.

¶ 2        Defendant, age 18, was convicted after a jury trial of first degree murder and sentenced on December 18, 2000, to 45 years, to be served at 100% in the Illinois Department of Corrections (IDOC). Defendant claims that his sentence is a *de facto* life sentence under *People v. Buffer*, 2019 IL 122327, and that, as applied to him, it violates the proportionate penalties clause of the Illinois Constitution, pursuant to numerous post-*Buffer* appellate court cases, such

as *People v. Franklin*, 2020 IL App (1st) 171628, ¶¶ 1-3 (18-year-old defendant permitted leave to file a successive petition alleging a proportionate penalties claim); *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶¶ 4-5; *People v. Ruiz*, 2020 IL App (1st) 163145, ¶ 1; *People v. Daniels*, 2020 IL App (1st) 171738, ¶¶ 1-2; *People v. Minniefield*, 2020 IL App (1st) 170541, ¶¶ 1-3 (19-year-old); *People v. Johnson*, 2020 IL App (1st) 171362, ¶¶ 1-2 (19-year-old); and *People v. Savage*, 2020 IL App (1st) 173135, ¶¶ 1-4 (22-year-old permitted second-stage proceedings regarding his proportionate penalties claim).

¶ 3        In response, the State does not argue that defendant failed to show cause for not raising his claim earlier and does not contest that defendant's sentence is a *de facto* life sentence. Rather, the State argues that defendant cannot show prejudice because his sentence was discretionary. However, this court has found numerous times that discretionary sentences are covered. See *Franklin*, 2020 IL App (1st) 171628, ¶ 38 (discretionary sentence); *Carrasquillo*, 2020 IL App (1st) 180534, ¶¶ 1, 22; *Ruiz*, 2020 IL App (1st) 163145, ¶ 18; *Minniefield*, 2020 IL App (1st) 170541, ¶¶ 12, 17; *Johnson*, 2020 IL App (1st) 171362, ¶¶ 16, 18; *Savage*, 2020 IL App (1st) 173135, ¶ 35; see also *Daniels*, 2020 IL App (1st) 171738, ¶¶ 2, 6 (18-year-old permitted leave to file a successive petition, even though he received an agreed life sentence pursuant to a guilty plea).

¶ 4        For the following reasons, we find that defendant's petition meets the very low threshold required for filing a successive petition, and we reverse and remand for second-stage proceedings.

¶ 5                                  BACKGROUND

¶ 6                              I. Evidence at Trial

¶ 7        Since defendant does not challenge either the sufficiency of the evidence against him or the admission of any particular exhibit or piece of testimony, we summarize the trial evidence below.

¶ 8        At trial, Detective Edward Cunningham testified that, at 9 p.m. on the evening of November 6, 1998, he responded to a call concerning a shooting. After arriving at the scene, he observed Harry Hudson, the victim, lying dead on the sidewalk.

¶ 9        Detective John Murray testified that he arrested defendant over a week later and that, after the arrest, defendant informed him that the shooting was the result of a war between two gangs, the Gangster Disciples and the Black Disciples. Defendant told him that he and Antoine Anderson belonged to the Gangster Disciples and that, two weeks prior to the shooting, a member of the Black Disciples shot Anderson's brother. (Casanova Johnson subsequently testified that Anderson's brother was shot in the leg.)

¶ 10       Detective Murray testified that defendant informed him that Anderson wanted revenge for his brother's shooting and that Anderson, defendant, and Casanova Johnson obtained a rifle from a man named "Little Greg." After returning to Johnson's house, they went outside, and defendant fired the rifle at a liquor store frequented by Black Disciples. However, the gun jammed, so the three returned to Little Greg who cleared the jam. After they returned to the outside of Johnson's house, Anderson fired at the liquor store and Hudson, an innocent bystander, walked into the line of fire and was shot. (The victim later died from the wound inflicted.)

¶ 11      Assistant State's Attorney (ASA) Laura Forester testified that she spoke with defendant at the police station and that he had given a statement that was substantially similar to the statement he had made to Detective Murray.

¶ 12      Johnson testified that he was a member of the Gangster Disciples at the time of the offense; that Anderson's brother was shot in November 1998; and that Anderson told Johnson and defendant that Anderson intended to kill some Black Disciples in revenge for his brother's shooting. On November 6, 1998, after obtaining a rifle from a Gangster Disciple called "Bird," Johnson, defendant and Anderson were outside Johnson's house; and Anderson tried to shoot the rifle at a liquor store frequented by Black Disciples, but the rifle jammed. The three of them went back to Bird, who unjammed the rifle. Although they arrived at different times, the three of them were again standing outside Johnson's house that evening, when defendant fired the rifle five times toward the liquor store. (However, defendant did not hit anyone.) After firing it, defendant handed the gun to Anderson, who also fired toward the liquor store. When Anderson was shooting, Hudson ran into the line of fire and was shot. Defendant, Anderson and Johnson then fled from the scene.

¶ 13      Defendant testified on his own behalf at trial, denying that he was outside with Anderson and Johnson during the shooting. Defendant denied that he handed Anderson a rifle or told him to shoot toward the liquor store. Defendant testified that the statement he made to the ASA was not true and that he made the statement because police officers had beaten him.

¶ 14      Benny Ybarra, a paramedic with Cermak Health Services, testified that he examined defendant as a new detainee on November 16, 1998. Ybarra testified that the report of his examination did not show signs of injury. Similarly, ASA Forester testified that defendant did not complain to her of police abuse, and she did not observe any injuries.

¶ 15          During closing argument, the State argued that the jury should find defendant guilty pursuant to an accountability theory, and the trial court instructed the jury concerning accountability. After listening to the evidence, arguments, and jury instructions, the jury found defendant guilty of first degree murder.

¶ 16                                     II. Sentencing

¶ 17          The presentence investigation report (PSI) was completed on December 18, 2000, and indicated that the instant offense occurred 11 days after defendant's eighteenth birthday. The PSI reported that defendant had no adult convictions and no pending cases or warrants. Defendant had only one juvenile conviction for drug possession, for which he received probation. At the time of his arrest, defendant resided with his parents, who were both employed and who had been married throughout defendant's life. Defendant responded that neither parent used drugs or alcohol in his presence, and there was no physical or sexual abuse in the home. Until his arrest, defendant attended high school where he was a below-average student. Defendant reported no physical or mental health problems and denied drug and alcohol use. For two months prior to his arrest, he was employed at a fast-food restaurant.

¶ 18          Defendant admitted that he had been a member of the Gangster Disciples since he was twelve years old, and he had gang tattoos. However, he denied having any rank within the organization.

¶ 19          At the sentencing hearing on December 18, 2000, the State observed that the sentencing range was 20 to 60 years, to be served at 100% of the sentence. In aggravation, the State submitted a victim impact statement from the victim's family. The State also observed that, when this offense was committed, defendant was on juvenile probation for drug possession; that the instant offense was gang-motivated; and that the victim was an innocent bystander.

¶ 20        In mitigation, defense counsel responded that, although defendant was on juvenile probation, this was defendant's first violent offense. At the time of the offense, defendant was both a senior in high school and employed at a fast food restaurant. While counsel observed that defendant was "approximately 18 years old" at the time of the offense, counsel made no arguments regarding defendant's age. Counsel also did not offer any arguments concerning age-related factors such as peer pressure, except to remark that defendant had "bad friends" like Anderson. Stressing that defendant did not pull the trigger on the victim, counsel argued for a sentence between 20 and 25 years.

¶ 21        The trial court made a specific finding "that Mr. Anderson was the motivating force and that [defendant] was not that motivating force, at least [not] the significant primary motivating force." However, finding that defendant intended the same result as Anderson, the court sentenced defendant to 45 years.

¶ 22        Anderson, who was 17 years old at the time of the offense, was sentenced to natural life in prison based on his conviction for the instant murder and another murder. See *People v. Anderson*, No. 1-05-1390, slip op. at 4 (2006) (unpublished order under Illinois Supreme Court Rule 23).

¶ 23        On January 17, 2001, defendant filed a written motion to reconsider his sentence on the ground that his 45-year sentence was "excessive in view of [his] background and the nature of his participation in the offense." In support, defendant cited *People v. Williams*, 196 Ill. App. 3d 851, 867 (1990), in which this court found that the trial court had abused its discretion by sentencing a 17-year-old defendant to 30 years when he had had no prior felony convictions and "he did not fire the weapon which resulted in the victim's death." At the hearing on the motion, defense counsel opted not to argue the motion, and the trial court stated that it denied

the motion based on the reasons that it had already articulated at sentencing for imposing the sentence.

¶ 24                                      III. Direct Appeal and Other Proceedings

¶ 25          On direct appeal, defendant claimed that the trial court erred by admitting a witness' prior consistent statements and that the prosecutor made improper remarks during closing argument. We did not find these claims persuasive and affirmed. *People v. Glinsey*, No. 1-01-0089 (2003) (unpublished order under Illinois Supreme Court Rule 23).

¶ 26          As defendant observes in his brief to this court, after the denial of his appeal, he "filed a number of collateral pleadings, none of which are relevant to this appeal."

¶ 27          On July 28, 2017, defendant filed the instant motion for leave to file a successive postconviction petition. In a written order dated April 11, 2019, the trial court found that defendant had established cause for not filing this claim earlier, since some of the case law defendant cited concerning young-adult sentencing had been decided since his last postconviction petition. *People v. Glinsey*, No. 99 CR 147-02 (Cir. Ct. Cook County Apr. 11, 2019), slip op. at 6 ("The non-existence of case law is an objective reason why he was impeded from bringing this earlier."). However, the trial court found that defendant could not establish prejudice because the *Miller* protections that apply to juvenile offenders did not apply to the 18-year-old defendant and because the 45-year sentence that he received was not a *de facto* life sentence. *Glinsey*, No. 99 CR 147-02, slip op. at 8.

¶ 28          Defendant mailed a *pro se* notice of appeal and an affidavit, notarized on May 7, 2019, that averred that he had mailed the notice on May 7, 2019. The notice was received by the trial court and filed seven days later on May 14, 2019. See Ill. S. Ct. R. 373 (eff. July 1, 2017) ("If received after the due date, the time of mailing by an incarcerated, self-represented litigant

7

shall be deemed the time of filing."). This appeal followed. To the extent that the notice of appeal was received late, we grant defendant leave to file a late notice of appeal. See Ill. S. Ct. R. 606(c) (eff. July 1, 2017) (the reviewing court may grant leave to file a late notice of appeal).

¶ 29                                                   ANALYSIS

¶ 30                                            I. Successive Petition

¶ 31         Defendant submitted his petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), which provides a statutory remedy for criminal defendants who claim their constitutional rights were violated at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21.

¶ 32         Although our supreme court has made clear that the Act contemplates only one postconviction proceeding, "[n]evertheless, [the supreme] court has, in its case law, provided two bases upon which the bar against successive proceedings will be relaxed." (*Edwards*, 2012 IL 111711, ¶ 22. Those two bases are (1) cause and prejudice and (2) actual innocence. *Edwards*, 2012 IL 111711, ¶¶ 22-23. Defendant, who is attempting to file a successive petition, has alleged only cause and prejudice.

¶ 33         At this early stage, when a defendant is merely seeking leave to file, he has to make only "a *prima facie* showing of cause and prejudice." *People v. Bailey*, 2017 IL 121450, ¶ 24.

¶ 34         Under the cause-and-prejudice test, a defendant must establish both (1) cause for his or her failure to raise the claim earlier and (2) prejudice stemming from his or her failure to do so. *Edwards*, 2012 IL 111711, ¶ 22 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)). As noted above, the State does not argue that defendant failed to show cause.

¶ 35         To determine whether this defendant made a *prima facie* showing of prejudice, we apply a *de novo* standard of review. *Bailey*, 2017 IL 121450, ¶ 13. *De novo* consideration

means that a reviewing court performs the same analysis that a trial judge would perform. *People v. Van Dyke*, 2020 IL App (1st) 191384, ¶ 41.

¶ 36                                    II. Eighth Amendment

¶ 37            To determine prejudice, defendant asks this court to look toward recent case law under both the eighth amendment and the proportionate penalties clause.

¶ 38            Although this defendant was only 11 days past his eighteenth birthday, it is well established that offenders who are 18 years old and older cannot raise a facial challenge to their sentences under the eighth amendment and the *Miller* line of cases. See *People v. Harris*, 2018 IL 121932, ¶¶ 59-61.

¶ 39            Where a defendant raises an as-applied challenge rather than a facial challenge, Illinois courts typically consider the sentencing claims of young adults under the proportionate penalties clause rather than the eighth amendment. *E.g.*, *Minniefield*, 2020 IL App (1st) 170541, ¶¶ 37-38 (considering a 19-year-old defendant's as-applied sentencing claim under the proportionate penalties clause rather than the eighth amendment). This is because federal cases have generally drawn a line at 18 years of age (see *Minniefield*, 2020 IL App (1st) 170541, ¶ 37) and because, as we explain below, the proportionate penalties clause offers a broader path to the same types of relief.

¶ 40                                III. Proportionate Penalties Claim

¶ 41            Defendant's petition alleges that his sentence is unconstitutional under the proportionate penalties clause of the Illinois Constitution because it ignores his rehabilitative potential.

¶ 42            Similar to the eighth amendment, the proportionate penalties clause of the Illinois Constitution embodies our evolving standard of decency. See *People v. Miller*, 202 Ill. 2d 328,

339 (2002) ("as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community" underlying both the proportionate penalties clause and the eighth amendment). The proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. This constitutional provision requires the balancing of the twin goals of retribution and rehabilitation, which requires a careful consideration of all the factors in aggravation and mitigation, including defendant's age, mental health, and growth potential. See *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002).

¶ 43        "The purpose of the proportionate penalties clause is to add a limitation on penalties beyond those provided by the eighth amendment and to add the objective of restoring the offender to useful citizenship." *Minniefield*, 2020 IL App (1st) 170541, ¶ 35. Thus, the proportionate penalties clause goes further than the eighth amendment in offering protection against oppressive penalties and sentences. *Minniefield*, 2020 IL App (1st) 170541, ¶ 35; see also *People v. Clemons*, 2012 IL 107821, ¶ 39; *People v. Fernandez*, 2014 IL App (1st) 120508, ¶ 63 ("the Illinois Constitution places greater restrictions on criminal sentencing than the eighth amendment's prohibition"). Unlike other constitutional provisions affecting criminal defendants, these two provisions—the eighth amendment and the proportionate penalties clause—are not in lockstep. See *Minniefield*, 2020 IL App (1st) 170541, ¶ 35.

¶ 44                                        IV. Young Adult Sentencing

¶ 45        On this appeal, the State does not contest that defendant's sentence is a *de facto* life sentence. In its brief to this court, the State repeatedly refers to defendant's sentence as "a discretionary *de facto* life sentence."

10

¶ 46          Our state constitution's proportionate penalties clause requires a balancing of the twin goals of retribution and rehabilitation, and our state's statutes and caselaw treat young adults under 21 years of age differently than adults.

¶ 47          Recent and traditional legislative enactments support the view that "youthful offender[s]" are those under the age of 21. See 730 ILCS 5/3-3-9(a)(1.5) (West 2018) (parole review for under 21-year-olds is called "youthful offender parole"). For example, our legislature changed the law to allow an individual convicted of first degree murder to be eligible for parole after serving only 20 years, if the individual was under 21 years old at the time of the offense and was sentenced after the law took effect. Pub. Act 100-1182, § 5 (eff. June 1, 2019) (adding 730 ILCS 5/5-4.5-110); Pub. Act 101-288, § 5 (eff. Jan. 1, 2020) (amending 730 ILCS 5/5-4.5-110(b) and renumbering as 730 ILCS 5/5-4.5-115(b)). Urging passage of this bill, House Majority Leader Barbara Flynn Currie argued that under-21-year-olds are "young people" who "do not always have good judgment." 100th Ill. Gen. Assem., House Proceedings, Nov. 28, 2018, at 47-49 (statements of Representative Currie). The Juvenile Court Act of 1987 defines a " '[m]inor' " as "a person under the age of 21 years subject to this Act" (705 ILCS 405/1-3(10), 5-105(10) (West 2018)), while an " '[a]dult' means a person 21 years of age or older" (705 ILCS 405/1-3(2) (West 2018)).

¶ 48          There are many other ways in which our state treats under-21-year-olds differently, such as prohibiting sales to them of alcohol (235 ILCS 5/6-16(a)(i) (West 2018)), cigarettes (Pub. Act 101-2, § 25 (eff. July 1, 2019) (amending 720 ILCS 675/1)), and wagering tickets (230 ILCS 10/18(b)(1) (West 2018)); prohibiting their gun ownership without parental permission (430 ILCS 65/4(a)(2)(i) (West 2018)); and limiting Class X sentencing for recidivist offenders to those offenders "over the age of 21 years" (730 ILCS 5/5-4.5-95(b)

(West 2018)). See also *People v. Mosley*, 2015 IL 115872, ¶ 36 (a ban on handgun possession by "minors" under 21 does not violate the second amendment); 760 ILCS 20/2(1) (West 2018) (Illinois Uniform Transfers to Minors Act defines an adult as one "21 years" old or older).

¶ 49     In addition to our state's statutory law, defendant's arguments for consideration of his rehabilitative potential find support in his individual factual record. When mentioning defendant's "potential for rehabilitation," the sentencing court did not find that he had none; rather, the court found only that, "at this point in time [the court] is not convinced that if [defendant] were to be released in the near future that he would not pose a significant danger to the community at large."

¶ 50     Defendant was a mere 11 days past his eighteenth birthday. As the sentencing court found, he was not the main "motivating" actor behind this offense; codefendant Anderson was. The instigation for this offense was the shooting of Anderson's brother and Anderson's desire for revenge. Defendant was a member of a gang since age 12 and, thereby, potentially subject to its peer pressure.Although defendant's sentence was discretionary, the sentencing court's remarks do not indicate any consideration of defendant's age or any age-related factors.

¶ 51     As defendant notes, the sentencing court expressed bewilderment "at what possibly could [have] motivate[d]" defendant to participate in Anderson's "plan." The court acknowledged that it was "at a loss to see anything in this presentence report that *** sheds light on what it is within" defendant "that would cause him to willingly" participate in Anderson's revenge plan. We will permit a remand to allow defendant to fill in the blanks, if he can, with recent evidence and research concerning the developing teenage brain.

¶ 52     For the foregoing reasons, we find that defendant has made a sufficient legal and factual showing for his petition to be filed. We remand to allow the trial court to consider whether, as

applied to him, as someone under 21 years old, his sentence of 45 years without the possibility of parole violates the proportionate penalties clause of our state. The law is in the developmental stage as to the sentencing of young offenders, and it is important for a trial court to create an appropriate record during both postconviction proceedings and sentencings so that a reviewing court can understand the factors the court used in its decision-making process.

¶ 53                                           V. Remand Required

¶ 54        Our supreme court has found that the proper vehicle for a young adult such as defendant, who is between 18 and 21 years old, to raise an as-applied challenge to a life sentence is in a postconviction proceeding. See *Harris*, 2018 IL 121932, ¶ 48; *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109; see also *People v. Thompson*, 2015 IL 118151, ¶ 44 (appropriate vehicle for an as-applied challenge by a 19-year-old offender to a life sentence is a postconviction petition, "including *** a successive petition"). When a defendant claims that the evolving science discussed in *Miller* and other cases applies to young adults between 18 and 21, the trial court is the most appropriate tribunal for factual development, and it is paramount that the record be developed for this purpose. *People v. Holman*, 2017 IL 120655, ¶¶ 29-30. A ruling without a developed record is "premature." *Harris*, 2018 IL 121932, ¶ 46; *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109.

¶ 55        As in *Harris*, 2018 IL 121932, ¶ 46, and in *Minniefield*, the record in the case at bar contains "no evidence about the evolving science and its impact on defendant's case." *Minniefield*, 2020 IL App (1st) 170541, ¶ 47. Therefore, "[d]efendant has shown prejudice by establishing a 'catch-22'[1]—without a developed record, he cannot show his constitutional

---

[1]"A 'catch-22' is defined as '[a] dilemma or difficult circumstance from which there is no escape because of mutually conflicting or dependent conditions.' " *Carrasquillo*, 2020 IL App (1st)

claim has merit, and without a meritful claim, he cannot proceed to develop a record." *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109.

¶ 56                                              CONCLUSION

¶ 57        For these reasons, we reverse and remand for second-stage postconviction proceedings. See *People v. Wrice*, 2012 IL 111860, ¶ 90 ("reversing the trial court's order denying leave to file his second successive postconviction petition and remand[ing] to the trial court for *** second-stage postconviction proceedings"); *People v. Jackson*, 2015 IL App (3d) 130575, ¶ 14 ("When a defendant is granted leave to file a successive postconviction petition, the petition is effectively advanced to the second stage of postconviction proceedings.").

¶ 58        Reversed and remanded with instructions.

¶ 59        JUSTICE MARTIN, dissenting:

¶ 60        In my view, Glinsey has not stated sufficient facts to warrant leave to file a successive petition challenging his sentence under the proportionate penalties clause. As-applied challenges are concerned with the specific facts and circumstances of the challenging party. *People v. Harris*, 2018 IL 121932, ¶ 38. But Glinsey does not assert anything about his specific facts and circumstances apart from his age that could render his discretionary sentence, which was within the statutorily prescribed range, "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Leon Miller*, 202 Ill. 2d 328, 338 (2002). Rather, his petition and appellate brief assert legal arguments urging that the protections afforded to juveniles under *Miller v. Alabama* should extend to young adults—a proposition that neither the United States nor Illinois Supreme Courts have recognized. Thus,

---

180534, ¶ 109 n.17 (quoting Lexico, https://www.lexico.com/en/definition/catch-22 (last visited Mar. 25, 2021) [https://perma.cc/A52N-HTMM]).

I would follow the reasoning in *People v. Carrion* 2020 IL App (1st) 171001, ¶ 38, finding "flat allegation[s] as to evolving science on juvenile maturity and brain development" insufficient to establish prejudice and merit further proceedings. See also *People v. Moore*, 2020 IL App (4th) 190528, ¶ 40 (concluding the same for the "flat assertion a 19-year-old's brain is more like a 17-year-old adolescent's in terms of development" without "any evidence to indicate how his own immaturity or individual circumstances would provide a compelling reason to allow him to file a successive postconviction petition"). When an adult offender claims the constitution requires him to be treated as a juvenile, he must allege something more unique and compelling for the courts to possibly agree with him.

¶ 61         Further, I do not share the majority's assessment of Glinsey's sentencing hearing. The sentencing judge reviewed the presentence investigation report, which included information about Glinsey's age, background, and related circumstances. Glinsey had the opportunity to present evidence related to the hallmarks of youth and, in my view, the record supports that the circuit court considered his youth and its attendant characteristics. The sentencing judge also heard the trial evidence first-hand and noted that Glinsey "actively and . . . gleefully involve[d] himself in a plot to go and kill other human beings." When the court asked "what possibly could [have] motivate[d]" Glinsey to participate in Anderson's revenge plan, I do not believe the judge was being literal. Rather than bewilderment, as the majority suggests, this was an expression of exasperation about a senselessly violent crime that defied explanation. "[N]othing in *Miller* or *Holman* suggests that we are free to substitute our judgment for that of the sentencing court." *People v. Croft*, 2019 IL App (1st) 150043, ¶ 33. I would reach the same holding other courts have reached in similar cases reviewing challenges to discretionary sentences imposed on young adult offenders convicted of first degree murder. See *People v.*

15

*Handy*, 2019 IL App (1st) 170213, ¶ 41; *People v. Gomez*, 2020 IL App (1st) 173016, ¶ 38; *Carrion*, 2020 IL App (1st) 171001, ¶ 32. Thus, I would find Glinsey received an adequate sentencing hearing and affirm the trial court's denial of leave to file a successive petition.

¶ 62       For these reasons, I respectfully dissent.

---

**No. 1-19-1145**

---

| | |
|---|---|
| **Cite as:** | *People v. Glinsey*, 2021 IL App (1st) 191145 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 99-CR-147(02); the Hon. Thomas J. Byrne, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Joshua M. Bernstein, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Noah Montague, Assistant State's Attorneys, of counsel), for the People. |

---