2021 IL App (1st) 190334-U

FOURTH DIVISION
June 30, 2021

No. 1-19-0334

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | No. 14 CR 11753 (01) |
| ESSIE NOONER, | ) |  |
|  | ) |  |
| Defendant-Appellant. | ) |  |
|  | ) | Honorable |
|  | ) | Allen F. Murphy, |
|  | ) | Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Justice Lampkin concurred in the judgment.
Presiding Justice Gordon specially concurred.

**ORDER**

¶ 1    *Held*:  Reversing the 18-year-old defendant's 66-year sentence and remanding for a new sentencing hearing where the trial court's sentence was based on a misapprehension of an important fact in the record.

¶ 2    After a jury trial, defendant Essie Nooner was found guilty of first-degree murder and attempted murder under an accountability theory and sentenced to a cumulative term of 66 years' imprisonment.  Defendant was 18 years old at the time of the offense.  On appeal, defendant

raises multiple arguments as to the impropriety of his sentence and error in the sentencing hearing.  Defendant first argues that the trial court abused its discretion in sentencing him when it relied on facts not in the record to justify the 66-year sentence.  Defendant also argues that his *de facto* life sentence violates the proportionate penalties clause of the Illinois Constitution where he is not one of the rare youths warranting such a term.  Additionally, defendant asserts this court should remand the matter for resentencing for the trial court to consider whether the sentencing protections established in *Miller v. Alabama*, 567 U.S. 460 (2012), apply to the 18-year-old defendant.  Defendant further maintains that his counsel was ineffective for failing to raise the *Miller* argument before the trial court and for failing to request his sentencing hearing be continued to take advantage of new statutory sentencing provisions for youthful offenders.  As we find that the trial court considered facts not in the record when imposing defendant's sentence, we reverse defendant's sentence and remand for a new sentencing hearing.

¶ 3                                  BACKGROUND

¶ 4      As defendant does not challenge the sufficiency of the evidence and raises issues solely related to his sentencing, we set forth only those facts necessary for the consideration of this appeal.

¶ 5      Defendant was charged by indictment, along with Kendall Roberson (Roberson) and William Gillyard (Gillyard), with the murder of John McIntyre (McIntyre) and the attempted murder of Najee Kellum (Kellum) under an accountability theory.  The State's evidence at trial established that on June 6, 2014, Roberson called McIntyre (on speakerphone with defendant and Roberson's brother Durrell present) and asked if he wanted to purchase some televisions.  After McIntyre agreed, Roberson instructed him to meet him at Roberson's home.  McIntyre then drove with Kellum to Roberson's residence.  While they waited for McIntyre to arrive, Gillyard

declared to defendant, Roberson, Tamara Ivy (defendant's girlfriend), Iesha Steward (Roberson's girlfriend), and Durrell that he was going to shoot McIntyre in the back of the head so he could take money and drugs from McIntyre.

¶ 6     When McIntyre arrived, defendant, Roberson, and Gillyard got into the back seat of McIntyre's vehicle. Defendant directed McIntyre to the abandoned house where the televisions were located. As McIntyre was pulling into the driveway of the abandoned building, Gillyard shot McIntyre in the head and shot Kellum twice, striking her once in the side of her face and once in her wrist. Kellum ran from the vehicle and defendant, Roberson, and Gillyard dispersed. McIntyre was pronounced dead at the hospital a short time later.

¶ 7     Kellum identified defendant as one of the offenders in a photo array. After waiving his *Miranda* rights, defendant was interviewed by detectives. His videotaped interview was admitted into evidence and published to the jury. During his interview, defendant admitted that he, Gillyard, and Roberson had planned to rob McIntyre. Defendant admitted he knew Gillyard intended to murder McIntyre. Defendant, however, denied he intended to murder McIntyre and appeared visibly disturbed over McIntyre's death.

¶ 8     The State rested its case and defendant presented no evidence. After hearing closing arguments and jury instructions, the jury found defendant guilty of first-degree murder and attempted murder.

¶ 9     The matter then proceeded to sentencing and the trial court ordered a presentence investigation report (PSI). The PSI indicated that defendant was one of four siblings raised by his parents until the age of 7 when his mother (a domestic violence victim) murdered his father during a dispute. Thereafter, defendant resided with his grandparents until the age of nine. From the ages of 9-13 he resided with his mother. Then, at the age of 13, he returned to live with his

grandparents. Defendant reported that while he now has a "good" relationship with his mother, that relationship had been contentious in the past. Defendant stated he was never abused or neglected as a child. He also denied any family history of alcohol or substance abuse, but admitted he used marijuana on a daily basis from ages 12-18. Defendant, who was 22 years old at the time the PSI was authored, stated that he was the biological father of an eight-year-old daughter. He also related that he had no employment history.

¶ 10    Regarding his educational background, defendant attended high school from 2009-2012 but did not graduate because he was expelled from school for fighting. Defendant was placed in special educational programs for behavioral and learning disorders. Defendant denied membership in a street gang, but admitted he was friends with 10 individuals who are members of a street gang. Defendant had no prior criminal history.

¶ 11    At the sentencing hearing, the State presented the victim impact statement of John McIntyre, Sr., the victim's father who placed the fault of this offense on defendant more than the other codefendants as he "could have stopped this senseless tragedy" by just walking away. He further testified that defendant took advantage of his son's kind, loving nature and, seeing it as weakness, played into it to commit this crime. He further testified regarding the psychological distress his son's death had on him and the negative impact it had on his life. The victim's mother, Tonya Walker, echoed Mr. McIntyre's statement and stressed that defendant was their next-door neighbor who grew up with her kids and that defendant even referred to McIntyre as "an uncle."

¶ 12    The State argued in aggravation as a firearm was used in the commission of the offense, a 15-year firearm enhancement would be added to make the minimum sentence for first-degree murder 35 years (to be served at 100%) and the minimum sentence for attempted murder 21

years (to be served at 85%) to run consecutively for a total of 56 years imprisonment. The State did not recommend a particular term of years be imposed.

¶ 13   In mitigation, defense counsel discussed defendant's childhood trauma—that at age 7 he was present when his mother murdered his father during a domestic dispute. Counsel indicated that defendant's mother was criminally charged, but found not guilty; however, this had a tremendous impact on defendant as a child. Thereafter, defendant was treated by psychologists and psychiatrists and had learning disability issues in school. Defense counsel requested the trial court merge the attempted murder count into the first-degree murder count and sentence defendant to 35 years' imprisonment based on the fact defendant was found guilty under an accountability theory. Defendant then addressed the court in allocution and apologized for the loss of McIntyre.

¶ 14   In sentencing defendant, the trial court stated the following:

"[There was] evidence that put the Defendant with Gillyard where Gillyard is armed with a handgun before the shooting takes place telling the entire world that he was going to rob and shoot [McIntyre]. The Defendant in this case was attached to Gillyard's hip when he is making these proclamations.

Before [McIntyre] and [Kellum] arrive and who – who is the one that lures [McIntyre] over there for the robbery? It's this Defendant. He is the one making the phone calls.

He knew Gillyard was armed. He knew the potential for gun play was there. If you ride along for a robbery, you could be riding along for a murder. That's exactly what happened here."

The trial court then sentenced defendant for first-degree murder to 30 years' imprisonment with a

mandatory 15-year firearm enhancement for a total of 45 years to be served at 100% time. Defendant was sentenced to the minimum 6 years' imprisonment for attempted murder with a mandatory 15-year firearm enhancement to be served at 85% time, to be served consecutively to the first-degree murder sentence. This appeal follows.

¶ 15                                    ANALYSIS

¶ 16     On appeal, defendant raises multiple arguments as to the impropriety of his sentence and errors in the sentencing hearing. Defendant first argues that the trial court abused its discretion in sentencing him when it relied on facts not in the record to justify the 66-year sentence. Defendant also argues that his *de facto* life sentence violates the proportionate penalties clause of the Illinois Constitution where he is not one of the rare youths warranting such a term. Additionally, defendant asserts this court should remand the matter for resentencing for the trial court to consider whether the sentencing protections established in *Miller* apply to the 18-year-old defendant. Defendant further maintains that his counsel was ineffective for failing to raise the *Miller* argument and for failing to request his sentencing hearing be continued. As we find the trial court considered facts not in the record when imposing defendant's sentence, we reverse defendant's sentence and remand for a new sentencing hearing.

¶ 17                              Error in Sentencing

¶ 18     Defendant first contends that he was denied a fair sentencing hearing where the trial court relied on inaccurate information not in the record to sentence him to a cumulative 66 years' imprisonment. Specifically, defendant observes that, when issuing his sentence, the trial court inaccurately stated that he was the one who called McIntyre on the telephone and inquired whether he would like to purchase the televisions. Defendant maintains that the record demonstrates it was Roberson who called McIntyre and that this error was so egregious so as to

warrant reversal under the plain-error doctrine.

¶ 19    In response, the State concedes that the trial court did err in this manner when sentencing defendant. The State, however, asserts that the error was insignificant and the trial court's statement was "just one small part of the trial court's discussion of defendant's role in helping [to] lure [McIntyre] into the trap that defendant, William, and Kendall had planned." The State also asserts that the defendant has waived this argument.

¶ 20    Defendant acknowledges he failed to properly preserve this claim resulting in forfeiture where he did not object at the sentencing hearing nor did he raise the issue in a post-sentencing motion. See *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010) (to preserve a claim of sentencing error, a defendant must make a contemporaneous objection and file a written posttrial motion raising the issue). Under the plain-error doctrine, however, "[p]lain errors or defects affecting substantial rights may be noticed [on appeal] although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). In the sentencing context, a defendant must demonstrate either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. *Hillier*, 237 Ill. 2d at 545 (citations omitted). "To obtain relief under this rule, a defendant must first establish that a clear or obvious error occurred." *Id.* This is because without error, "there can be no plain error." *People v. Mitchem*, 2019 IL App (1st) 162257, ¶ 37.

¶ 21    At issue here is whether the trial court erred when sentencing defendant. A general principle of sentencing is that the trial court is the proper forum to determine a sentence and the trial judge's decision in sentencing is entitled to great deference and weight. *People v. Snyder*, 2011 IL 111382, ¶ 36; *People v. Latona*, 184 Ill. 2d 260, 272 (1998). "It is the province of the trial court to balance relevant factors and make a reasoned decision as to the appropriate

punishment in each case." *Latona*, 184 Ill. 2d at 272. A reviewing court should neither reweigh factors that the trial court considered nor disturb a sentence that is within the statutory limits for the offense unless the trial court abused its discretion. *People v. Alexander*, 239 Ill. 2d 205, 214-15 (2010). Here, defendant's sentence was in the mid-range for first-degree murder and the minimum sentence for attempted murder. See 730 ILCS 5/5-4.5-20 (West 2018) (sentencing range for first-degree murder 20 to 60 years); 730 ILCS 5/5-4.5-25 (West 2018) (sentencing range for attempted murder is 6 to 30 years). A 15-year firearm enhancement was added to both counts. See 730 ILCS 5/5-8-1(a)(1), (d)(i) (West 2018); 720 ILCS 5/8-4(c)(1)(B) (West 2018). A sentence is an abuse of discretion only if it "is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

¶ 22   That said, where a trial court's exercise of discretion is founded in a misconception, the exercise of discretion is not proper. *People v. Zapata*, 347 Ill. App. 3d 956, 964 (2004); *People v. Ross*, 303 Ill. App. 3d 966, 984-85 (1999). An exercise of discretion based on a misunderstanding of *law* is not a proper exercise of discretion: "Where a trial court's exercise of discretion has been frustrated by [its application of] an erroneous rule of law, appellate review is required to permit the exercise of discretion consistent with the law." *People v. Williams*, 188 Ill. 2d 365, 369 (1999). Similarly, an exercise of discretion based on a manifest error of *fact* is also an abuse of discretion. See *People v. Johnson*, 227 Ill. App. 3d 800, 817 (1992) (reviewing cases and finding the trial court abused its discretion and remanding for a new sentencing hearing where the trial court indicated the crime was drug-related during sentencing, but there was no evidence in the record from which such an inference could be drawn).

¶ 23   When the sentencing judge relies on improper factors contrary to the evidence in the

record, the sentence should be vacated and the cause remanded for resentencing. *Zapata*, 347 Ill. App. 3d at 964; *Ross*, 303 Ill. App. 3d at 984-85. This is so unless we conclude from the record that the weight accorded to the improperly considered evidence was so insignificant that it did not lead to an increase in the defendant's sentence. *People v. Walker*, 392 Ill. App. 277, 301 (2009); *Ross*, 303 Ill. App. 3d at 984. A reviewing court should not focus on a few words or statements of the trial court but should make its decision based on the entire record. *People v. Fetter*, 227 Ill. App. 3d 1003, 1010 (1992).

¶ 24    In this instance, the State concedes the trial court erred when it stated, "Before [McIntyre] and [Kellum] arrive and who – who is the one that lures [McIntyre] over there for the robbery? It's this Defendant. He is the one making the phone calls." Upon reviewing the record, we agree with the parties that the trial court did not accurately state the evidence in the record when it made this pronouncement during the sentencing hearing. The evidence clearly established that it was Roberson who made the telephone call to McIntyre wherein he negotiated the price for the two televisions and instructed McIntyre where to go to acquire the televisions, not defendant. See *Johnson*, 227 Ill. App. 3d at 817. In addition, the record discloses that the trial court made this same error during its ruling on defendant's posttrial motion when it stated that while it was "very, very familiar with the facts of this case[,] *** this Defendant set that plan in motion by making phone calls to [McIntyre] to get him to come over there. Without those phone calls, [McIntyre] doesn't show up and without [McIntyre] showing up we don't have a murder that night." The record thus demonstrates the trial judge had a fundamental misapprehension of the evidence in this case regarding this defendant, which led to the imposition of a 66-year sentence. See *Zapata*, 347 Ill. App. 3d at 966; *Fetter*, 227 Ill. App. 3d at 1010.

¶ 25    Having found error, we now consider whether it rises to the level of plain error.

Defendant argues both that the evidence at sentencing was closely balanced under the first prong of the plain-error doctrine and that his substantial rights were implicated under the second prong of the plain-error doctrine. We agree with defendant that the evidence at the sentencing hearing was closely balanced. Defendant, who at the age of seven witnessed his father's murder at the hands of his mother, was exposed to violence in the home at a very young age. This is a strong mitigating factor. See *People v. Towns*, 182 Ill. 2d 491, 519 (1998) ("Evidence of a defendant's background, including family history, parental abuse and neglect, is important to the sentencing decision and can be an influential mitigating factor."). Defendant also reported having a good relationship with his mother, siblings, and grandparents, which is indicative of his rehabilitative potential. See *People v. Pearson*, 331 Ill. App. 3d 312, 320 (2002). He also was diagnosed with a behavioral disorder and learning disabilities that were being treated. Despite these issues, defendant attended high school for at least three years before being expelled. He also had no prior criminal history. As defendant argues in his brief, the only aggravating factor was this case itself.

¶ 26    We further observe that defendant was found guilty of first-degree murder and attempted murder under an accountability theory. While we acknowledge that, pursuant to the accountability statute, the theory under which defendant was convicted does not itself render his sentence excessive (*People v. Miller*, 202 Ill. 2d 328, 340 (2002)), the trial court in this instance primarily focused on defendant's level of involvement in the offense when imposing the sentence. Here, the evidence established that defendant was not armed with a firearm during the offense, and he expressed extreme remorse during his police station interview. In addition, the evidence demonstrated that defendant knew McIntyre and defendant was aware that his participation in the robbery was essential to the plan. As previously discussed, the trial court

strongly relied on its misapprehension of the record—that defendant telephoned McIntyre and essentially was the individual who lured McIntyre to the robbery—when sentencing defendant. Our review of the record reveals that there was absolutely no such evidence introduced nor was there any evidence regarding any statements defendant may have made to lure McIntyre.

¶ 27     We acknowledge that the special concurrence goes to great lengths to discredit this finding.  We stand by our finding that no evidence was introduced that defendant made the telephone call to McIntyre.  In response to the special concurrence's description of the defendant's involvement in this incident, we use the trial court's own words--the defendant here was someone who just happened to "ride along."  There was no evidence that defendant made the telephone call to McIntyre.  His role during the conversation which occurred between Roberson and McIntyre was that of a passive listener and not that of an active participant.  There was no evidence in the record to even suggest that McIntyre knew defendant was on the call.

¶ 28     The remainder of the special concurrence characterizes defendant's videotaped statement as demonstrating that defendant knew he was essentially the bait used to lure McIntyre.  The recitation of defendant's statements only serves to support our conclusion—that the trial judge misapprehended important facts when sentencing defendant.  The trial judge in sentencing defendant could have discussed how defendant's mere presence was an integral part of the robbery plan but it did not.  Instead, the trial court stated what was true for Roberson—not defendant—that it was the *defendant* who lured McIntyre by making the telephone call.  The parties agree the trial court misstated the evidence and, to this court, the error is plain—the trial court gave significant weight to a fact not in evidence when sentencing defendant.

¶ 29     As the evidence introduced during the sentencing hearing is closely balanced, there is a possibility that the trial court's misunderstanding of who called McIntyre may have impacted

defendant's sentence. Accordingly, we reverse defendant's sentence and remand for the trial court to conduct a new sentencing hearing. See *Zapata*, 347 Ill. App. 3d at 964; *Ross*, 303 Ill. App. 3d at 984-85.

¶ 30    Since we are reversing defendant's sentence on this basis, we need not consider defendant's remaining arguments regarding a violation of the proportionate penalties clause and ineffective assistance of counsel. See *People v. Austin*, 2019 IL 123910, ¶ 27 ("A court will not consider constitutional issues where a case can be decided on other grounds.").

¶ 31    Finally, we address the statement made in the special concurrence regarding the comparison between Roberson and defendant's sentences: "to the extent that the majority's order suggests that the younger codefendant, Kendall Roberson, is deserving of a longer sentence, I cannot concur with that finding for the reasons already stated in my dissent in the *Roberson* case." To be clear, we made no such finding nor does this court opine on the sentence defendant will receive on remand.

¶ 32                                   CONCLUSION

¶ 33    For the reasons stated above, we reverse defendant's sentence and remand for a new sentencing hearing.

¶ 34    Reversed and remanded.

¶ 35    PRESIDING JUSTICE GORDON, specially concurring.

¶ 36    I agree with the majority's decision to reverse, but I must write separately to show the fact that the initial conversation with McIntyre was on a speakerphone and all of the parties participated in some way, and to show all of the consequences of the trial court's confusion in sentencing.

¶ 37    The trial court was obviously confused over the roles of this defendant and codefendant

Kendall Roberson when the trial court erroneously concluded that it was this defendant, not Roberson, that lured McIntyre into believing that he was meeting the parties to receive a good deal on the purchase of some televisions, when in actuality, the undisputed evidence in this case shows that it was Roberson who called McIntyre to set up this meeting. This defendant had no prior communication with McIntyre regarding the purchase of the televisions. However, this defendant grew up with McIntyre as his friend, played ball and socialized with him, and his very presence made McIntyre feel safe.

¶ 38     With respect to the initial phone contact, the majority writes: "There was no evidence to even suggest that McIntyre knew defendant was on the call." *Supra* ¶ 27. In defendant's videotaped confession, which was introduced as an exhibit at trial, defendant stated that he was "talking" during this call, and that was because the victim knew him. What "lured" the victim to the perpetrators' location was the fact that defendant was there–a fact about which defendant was well aware. *Supra* ¶ 26.

¶ 39     Again and again, throughout the hours of interview, the officers asked "why" an event or action occurred, and defendant's answer was always some form of "he know me."

¶ 40     The officers asked "why" the initial telephone contact with the victim was played on speakerphone. The majority makes much of the fact that codefendant Kendall Roberson was the one who placed the initial call to the victim, and not defendant. However, since the call was on speakerphone, all three people were present—defendant, codefendant Kendall Roberson and Kendall's brother Durrell—and could listen and participate. When the officers asked defendant why the call was placed on speakerphone, defendant responded that the victim "know me, I'm back, I'm talking, you know."

¶ 41     The officers asked defendant why the victim arrived at defendant's house, and why the

victim let them all into his vehicle. Defendant replied that the victim never would have let "Big Will" into his vehicle, except for the fact that he knew "us." Otherwise, "this n*** would never have let [Big Will] in his car." Defendant explained that codefendant Roberson was "the new kid," and that Roberson only "knows people off of me." Defendant admitted that the victim came because he trusted defendant.

¶ 42   Immediately before the victim was shot, defendant, codefendant Roberson and "Big Will" were sitting in the back of the victim's vehicle, while the victim and his girlfriend sat in the front.  Defendant admitted that, when the victim asked, "what's happening," defendant reassured the victim, saying "nothing bro, we're good."

¶ 43   Defendant stated that the victim's last words were: "Essie, what's good, baby?" "Essie" is defendant's first name. Defendant observed: "That's the last name he say."

¶ 44   During the interview, defendant admitted that he knew "Big Will" intended to shoot the victim.

¶ 45   In sum, I concur with the majority's finding that the sentence in the *Nooner* case must be reversed and the case remanded for resentencing. However, to the extent that the majority's order suggests that the younger codefendant, Kendall Roberson, is deserving of a longer sentence, I cannot concur with that finding for the reasons already stated in my dissent in the *Roberson* case. *People v. Roberson*, 2021 IL App (1st) 181726, ¶¶ 48-72.

¶ 46   As a result of the trial court's erroneous beliefs during sentencing, the trial court sentenced Roberson to a 40-year sentence and sentenced this defendant to a 66-year term. In this case, we have no other alternative but to reverse this defendant's sentence and remand for resentencing.